UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-13-TBR

BRITTON LEVON MCPHERSON,                                              PLAINTIFF

v.

KAREN RAMEY, *et al.*,                                                 DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendants Correct Care Solutions, Lester Lewis, Kelly Neeley, and Karen Ramey's Motion for Summary Judgment. [DN 33]. Plaintiff Britton McPherson responded, [DN 41], and Defendants replied, [DN 42]. This matter is ripe for adjudication. For the reasons set forth herein, Defendants' Motion for Summary Judgment, [DN 33], is GRANTED.

**BACKGROUND**

Beginning on December 28, 2017, Plaintiff claims he reported to Kentucky State Penitentiary ("KSP") staff that he was experiencing pain and swelling in his left arm, as well as vomiting. [DN 29 at 152]. Over the course of the next several days, Plaintiff was treated by prison officials with pain killers, antibiotics, and warm compresses. *Id.* at 152–56. Unfortunately, Plaintiff's condition continued to worsen until he was transferred to Baptist Paducah's emergency room where he was diagnosed with necrotizing fasciitis. *Id.* at 155. Plaintiff was then transferred to the University of Kentucky for further evaluation and treatment before eventually being discharged to Kentucky State Reformatory. *Id.* at 155–56.

On February 7, 2019, Plaintiff filed a Complaint against Nurse Practitioner Karen Ramey, Dr. Lester Lewis, Nurse Kelly Neeley, and an unknown Corrections Officer at KSP, both in their official and individual capacities, as well as former Kentucky Department of Corrections

1

Commissioner James Erwin in his official capacity, and Correct Care Solutions ("CCS") alleging that they violated his Eighth Amendment rights through deliberate indifference to a serious medical need. [DN 1]. Moreover, Plaintiff claims his constitutional rights were impaired by the Kentucky Department of Corrections and/or CCS's policies and procedures, or lack thereof. *Id.* He seeks compensatory and punitive damages and injunctive relief. *Id.*

The Court conducted an initial review of the Complaint pursuant to 28 U.S.C. § 1915A. [DN 6]. It dismissed the official-capacity claims for damages against Defendant Erwin and the unknown KSP officer for failure to state a claim upon which relief may be granted. *Id.* Subsequently, Plaintiff filed an amended complaint, [DN 29], and Defendants CCS, Lewis, Neeley, and Ramey moved for summary judgment, [DN 33].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). The moving party must shoulder the burden of showing the

absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted), nor to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

**DISCUSSION**

**A. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones*, 549 U.S. at 218–19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

However, "failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cty. Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 204).

In this case, Plaintiff was discharged from UK Healthcare and was transferred to Kentucky State Reformatory on January 8, 2018. [DN 33 at 235]. Pursuant to Kentucky Corrections Policies and Procedures ("CPP") § 14.6, Plaintiff was then required to file a grievance relating to this incident within five working days. [DN 33-5]. The record shows that Plaintiff completed and signed an inmate grievance form relating to this incident on January 11, 2018. [DN 33-2 at 255]. However, the Grievance Aide did not sign the grievance form until January 16, 2018. *Id.* A typed version of the grievance form was signed and dated by both Plaintiff and the Grievance Aide on January 19, 2018. *Id.* at 252. The typed grievance form states that it was received by the Grievance Aide on January 16, 2018. *Id.* The Inmate Grievance Office issued a Grievance Rejection Notification on February 1, 2018 stating that Plaintiff's grievance had been deemed non-grievable because it was filed more than five working days after the incident. *Id.* at 251. Plaintiff filed a second grievance relating to his medical issues in April 2018. *Id.* at 257. It was also rejected by prison officials as untimely. *Id.* at 256.

Defendants argue that because Plaintiff's grievance requests were dismissed as untimely, he failed to comply with the PLRA's exhaustion requirement and summary judgment is appropriate. [DN 33 at 238]. It is clear that Plaintiff's second grievance, filed months after the incident in question, is untimely pursuant to CPP § 14.6. However, Plaintiff contests the timeliness of his initial grievance. [DN 41 at 379]. Specifically, Plaintiff asserts that on January 9, 2018, he signed up to see a grievance aide. *Id.* at 380. On January 11, 2018, the Grievance Aide came to the hospital facility where Plaintiff was housed and provided him with a grievance form. *Id.* Plaintiff

4

claims he completed, signed, dated, and returned the form to the Aide on January 11, 2018. *Id.* While he acknowledges that the typed form was not signed until January 19, 2018, Plaintiff argues that this was outside of his control. *Id.* Plaintiff contends his grievance was timely because he signed the handwritten grievance form within three days of returning from the hospital. *Id.* In reply, Defendants argue that "Plaintiff has presented no verified proof, by way of affidavit or otherwise, to support [his] allegations." [DN 42 at 402]. They did not offer any evidence regarding the disparity between the date the Plaintiff signed his initial grievance form and the date the form was signed by the Grievance Aide. *Id.*

The Supreme Court identified certain circumstances under which the exhaustion requirement of the PLRA "poses no bar" to a prisoner's lawsuit. *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). Among these circumstances is when the administrative procedure becomes effectively "unavailable" to prisoners because "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* Based on the record before the Court, it is unclear whether Defendants thwarted Plaintiff's attempt to take advantage of the grievance process by delaying the time between Plaintiff's completion of the grievance form and the date which the Aide processed Plaintiff's grievance. However, the Court need not conduct an evidentiary hearing on this issue[1] because, as will be discussed below, even if administrative remedies were effectively unavailable to Plaintiff, Defendants Ramey and Neeley would still be entitled to summary judgment because Plaintiff fails to establish a claim for deliberate indifference to a serious medical need.

---

[1] *See Cohron v. City of Louisville, Ky.*, No. CIV.A. 06-570-C, 2012 WL 1015789, at *1 (W.D. Ky. Mar. 22, 2012), *aff'd*, 530 Fed.Appx. 534 (6th Cir. 2013) ("An evidentiary hearing is necessary to determine whether Cohron exhausted his administrative remedies.").

In regard to Plaintiff's claims against Lewis and CCS, Defendants note that Plaintiff's grievances do not identify either Defendant. [DN 33 at 238]. The Sixth Circuit "does not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation omitted). Rather, "it is sufficient for a court to find that a prisoner's grievance gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.* However, "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011). Here, CPP § 14.6 states that "[t]he grievant shall include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem'" section of the grievance form. [DN 33-5 at 308]. In this case, Plaintiff's grievances fail to mention Lewis or CCS's involvement in the incident at issue. [DN 33-2 at 255, 257]. Moreover, the grievances did not provide prison officials with fair notice that Plaintiff was alleging mistreatment by Lewis or CCS. *Id.* Therefore, Plaintiff failed to exhaust his administrative remedies in regard to his claims against Lewis and CCS and summary judgment is appropriate.

**B. Deliberate Indifference Claim**

Generally, "[w]here prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eight Amendment." *Horn v. Madison Cnty. Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). Thus, to establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs."

*Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle,* 429 U.S. at 104); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). In the Sixth Circuit, the test for "deliberate indifference" has both an objective and subjective component. *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). To satisfy the objective component, the inmate must show that the alleged deprivation is "sufficiently serious"—*i.e.*, "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). And to satisfy the subjective component, he must show that prison officials had a "sufficiently culpable state of mind." *Id.*; *see also Farmer*, 511 U.S. at 834. More precisely, an inmate must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety, which is to say the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Clark–Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 837).

In *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit determined that the objective component may be satisfied either (1) by an "obviousness" standard, meaning that which is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Id.* at 897 (quoting *Friend v. Rees*, 779 F.2d 50, 1985 WL 13825, at *3 (6th Cir. Oct. 1, 1985) (unpublished table decision)), or (2) by "the effect of delay in treatment," *Id.* (emphasis omitted). The *Blackmore* court went on to discuss its prior holding in *Napier v. Madison Cnty., Ky.*, where it previously held that an inmate "must place verifying medical evidence into the record to establish the detrimental effect of the delay." *Id.* at 898 (discussing *Napier*, 238 F.3d at 742). The court specifically clarified *Napier*'s "verifying medical evidence" requirement as applying only where claims involved minor maladies or nonobvious afflictions. *Id.* Conversely,

7

where the facts show an "obvious need for medical care that laymen would readily discern as requiring prompt medical attention," no verifying medical evidence is necessary. *Id.* In this case, there is no question that Plaintiff's life-threating illness in which his arm swelled to several times its normal size and his tissue was decaying would have been obvious as to satisfy the objective component of a deliberate indifference claim. [DN 33 at 243].

To satisfy the subjective component, an inmate must establish that a prison official acted with "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). Mere negligence on the part of the prison official will not suffice, *Farmer*, 511 U.S. at 838, nor does a claim of medical malpractice rise to the level of a constitutional violation simply because the victim is a prisoner, *Estelle*, 429 U.S. at 106. Although "fundamental fairness and our most basic conception of due process mandate that medical care be provided to one who is incarcerated and may be suffering from serious illness or injury . . . [t]his is not to say that every request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); *accord Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995); *Sharpe v. Patton,* 2010 WL 227702, at * 10 (E.D.Ky. Jan. 19, 2010). Instead, to satisfy the subjective component, a prisoner must show that the prison official was both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S at 837.

In *Westlake v. Lucas,* the Sixth Circuit noted:

> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments . . . .

8

537 F.2d at 860 n.5 (citations omitted). Stated differently, "when a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated." *Alexander v. Fed. Bureau of Prisons*, 227 F.Supp.2d 657, 665 (E.D.Ky. 2002) (citing *Estelle*, 429 U.S. at 107; *Westlake*, 537 F.2d at 860 n.5). Following this reasoning, and tracking the Supreme Court's language in *Estelle,* the Sixth Circuit held in *Durham v. Nu'Man* that "[a] medical decision not to order [a specific medical treatment], or like measures, does not represent cruel and unusual punishment." 97 F.3d 862, 868 (6th Cir. 1996) (first alteration in original) (quoting *Estelle*, 429 U.S. at 107).

In this case, Plaintiff alleges a difference in opinion as to what type of treatment his arm required. Plaintiff claims that his injury was so obvious that Defendants should have made greater attempts to treat and diagnose his symptoms before it got to the point where his life was at risk. [DN 41 at 381]. Additionally, he asserts that if Defendants had acted sooner in diagnosing his condition and treating his pain, his qualify of life would not be forever damaged. *Id.* at 385. While Plaintiff may believe that more diagnostic tests should have been run to determine his medical condition, or that he should have been given more pain medication, that belief is simply a disagreement with the treatment he received. Plaintiff has submitted no proof, other than his own assertions, that alter that conclusion. Moreover, Defendants have provided unrefuted expert testimony establishing that "necrotizing fasciitis is a rare condition and that the 'progressive treatment with Bactrim DS and Clindamycin was medically appropriate to treat a great majority of infections that one would reasonably expect to encounter in the correctional setting." [DN 33 at 245]. Moreover, the medical expert notes that Defendants' timely transfer of Plaintiff to the emergency room likely saved his life. *Id.* Ultimately, a difference of opinion as to the appropriate

or best course of treatment between Defendants and Plaintiff does not satisfy the subjective component of a deliberate indifference claim. Therefore, Defendants Neeley and Ramey are entitled to summary judgment.

## CONCLUSION

For the reasons stated herein: Defendants' Motion for Summary Judgment, [DN 33], is **GRANTED**. The Court will enter a separate Order consistent with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

December 16, 2019

CC: Attorneys of Record

Britton Levon McPherson
160929
LITTLE SANDY CORRECTIONAL COMPLEX
505 Prison Connector
Sandy Hook, KY 41171